JOSEPH PREINER v. PETER H. MEYER.[1]

January 15, 1897.

Nos. 10,266—(220).

Estoppel.

> On the facts in this case, *held*, the grantee of the mortgagor is not, as against the mortgagee, estopped from asserting a paramount title.

Documentary Evidence.

> Certain certificates and letters of the register of the local land office and the commissioner of the general land office *held* to be each the mere legal conclusion of the officer as to the legal effect of records in his office, and of no weight as evidence.

Title—Presumption.

> Except as hereinafter stated, neither party connected himself with the government title. The plaintiff mortgagee proved that the mortgagor was in possession of the land at the time he made the mortgage. It appeared that he subsequently conveyed to and delivered possession to the defendant, who applied to the officers of the United States land office to enter the land as a homestead, and his application was pending at the time of trial. Under these circumstances, *held*, it cannot be presumed that the title to the land is in the United States, and a finding to that effect is not sustained by the evidence.

Appeal by plaintiff from an order of the district court for Morrison county, Searle, J., denying a motion for a new trial. Reversed.

*Lindbergh, Blanchard & Lindbergh*, for appellant.
*Oscar Taylor*, for respondent.

CANTY, J. On November 27, 1888, Nicholas Meyer was in possession of the land here in controversy, and on that day mortgaged the same to a loan company. The latter, pursuant to statute, foreclosed the mortgage under the power of sale therein contained, and plaintiff bid in the land at the foreclosure sale. The time to redeem expired, and no redemption was made. In the meantime, Nicholas Meyer conveyed the land to his son, the defendant, who entered into possession of the same; and, when the year to redeem

---

[1] Reported in 69 N. W. 887.

expired, plaintiff brought this action against him in justice's court, under G. S. 1894, § 6118, to recover possession of the premises; obtained judgment of restitution; and defendant appealed to the district court, where, on a trial before the court, without a jury, judgment was ordered for defendant as to the land in section 35, and for the plaintiff as to the land in section 34. From an order denying a new trial, plaintiff appeals to this court.

The district court found as facts that the mortgagor never had any title to the part of the mortgaged premises situated in section 35, but that the same is government land, subject to entry as a homestead; that defendant is qualified to make such a homestead entry, and

"Sought to obtain title thereto by making such homestead application and entry on the 13th day of February, 1895, which application is still pending in the department of the government at Washington, and is undecided; that the defendant, at the time of the commencement of this action, claimed to hold and have possession of said lands by virtue of his said homestead entry and application, and not otherwise."

1. If this finding is sustained by the evidence, we cannot hold that, as contended by appellant, defendant is estopped from asserting such a claim against appellant. True, defendant cannot defeat this action by showing merely that the mortgagor had no title. He mortgaged what title he had, and neither he nor those claiming under him can withhold from the mortgagee the benefits of that title, such as it is. But the grantee of the mortgagor is not estopped by any covenant made by the latter to the mortgagee, and may connect himself with a paramount title, and set up the same to defeat the mortgagee. Such a case is essentially different from one where a party receives the possession under an agreement, express or implied, to restore it at a certain time, or on certain contingencies, to the person invoking the estoppel. Such an estoppel exists between landlord and tenant, and between the vendor and vendee in an executory contract for the sale of lands.

2. But we are of the opinion that the findings of the court that the mortgagor had no title to the land here in question, but that the title is in the United States, are not supported by the evidence.

It seems to us that, on the evidence, neither party has connected himself with the government title. Plaintiff introduced in evidence

a deed of this land from the Western Railroad Company of Minnesota to Nicholas Meyer, dated March 19, 1881, the mortgage from the latter, and the foreclosure proceedings, and also introduced evidence tending to prove that Nicholas Meyer was in exclusive possession of the land for about 20 years prior to the trial, except during the last year prior to such trial, during which year defendant was in possession.

Plaintiff also introduced in evidence an order, dated April 9, 1857, from the land commissioner to the register and receiver of the local land office, withdrawing from entry and sale the land in question and other lands, giving, as a reason for such withdrawal, that the lands fell within the probable line of routes under the grant to the territory of Minnesota by act of congress approved March 3, 1857,[2] to aid in the construction of certain railroads in that territory. No revocation of this order of withdrawal appears ever to have been made. There are in the record other certificates of the officers of the local and general land office, which we will now notice. One is in the following form:

"St. Cloud, Minn., June 21, 1895.
"I, Theo. Bruener, the undersigned, register of the United States land office at St. Cloud, Minnesota, hereby certify that it appears from the tract books, plats, records, and files of said land office that the [here follows a description of the land in controversy] have been selected by the Brainerd branch of the St. Paul and Pacific R. R. Co., December 31, 1877, list No. 2, and also by the Brainerd branch of the St. Paul & Pacific R. R. Co., February 12, 1892, list No. 2."

There is another certificate, dated July 31, 1895, in the same form, made by Bruener, as register, in which he states that it appears from the records in his office that the land in question has been selected by said Brainerd branch. These certificates are the mere legal conclusions of the register as to the legal effect of records in his office, and are of no weight whatever as evidence, even if received without objection. The register cannot in this manner be made the judge of this case, or of portions of this case.

There were also introduced in evidence two letters from the commissioner of the general land office to defendant's attorney, each stating that it is in answer to a letter requesting a certificate to

[2] 11 Stat. 195.

the effect that it appears from the records and files in the land office that the title to this land is in the United States. One of these letters states further:

"In reply, you are advised that this office only certifies to copies of the official records and papers on file, and not to abstract statements drawn therefrom. Consequently, such a certificate as you desire cannot be furnished you."

It also states that the records of the office show that the land in question has been selected by the Western Railroad Company, but that the title to the same is still in the United States, and the commissioner offers to furnish properly certified copies of the records. The other letter is of a later date, and reiterates these statements. The same must be said of these letters as of the certificates above referred to: The statements in them as to what the records of the general land office show as to the title to this land are but the mere conclusions of the writer, and not evidence.

Under G. S. 1894, §§ 5734, 5753, 5754, 5757, a certified transcript of the entries in the records and books in either the local or general land office, and certified copies of other documents in the same, are competent evidence (Tidd v. Rines, 26 Minn. 201, 2 N. W. 497); and, under section 5732, the officer may certify that he has made diligent examination in his office, and that the entries and documents so certified to by him are all of the records that can be found in his office pertaining to or referring in any manner to the land in question. But no such certificate was obtained in this case. There was also introduced in evidence an order from the commissioner to the register and receiver of the local land office, dated October 5, 1894, in reference to other lands, and declaring certain selections of the Northern Pacific Railroad canceled, and also another order, dated January 31, 1895, revoking said last-named order. This is all of the evidence that it is necessary to consider.

While plaintiff failed to connect himself with the government title, he was not obliged to do so, unless defendant claimed, and was entitled to claim, through some other title than that through which plaintiff claimed. If plaintiff and defendant both claim through the same source of title, to wit, the Western Railroad Company and Nicholas Meyer, defendant is estopped to deny plaintiff's title; and in such a case the failure of plaintiff to show a title from the Unit-

ed States to him raises no presumption that the title is in the United States. The fact that defendant refuses to claim through or assert such title, when it is the only one he ever appeared to hold, does not alter the presumption. Nicholas Meyer had the prior possession, and it is presumed that he, and not the United States, was the owner at the time of such possession. Undoubtedly, defendant could have destroyed this presumption by showing a conveyance or certificate of entry from the United States to himself. But he has not done this. He has simply shown that he has offered to make such an entry,—applied to make it; that he, and not the United States, asserted that it has the title to this land. Under all of the circumstances, it cannot be presumed, in favor of defendant, that the title to this land is in the United States, and the finding of the court that it is, cannot be sustained, as it is not supported by the evidence.

The order denying a new trial is reversed, and a new trial granted.